UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS R. AUSTIN,

        Petitioner,

v.                                                             Case No. 14-cv-608-pp

SUSAN NOVAK,

        Respondent.

**ORDER CONSTRUING PETITIONER'S LETTER AS SECOND MOTION FOR APPOINTMENT OF COUNSEL AND DENYING MOTION (DKT. NO. 27) AND DENYING OBJECTION TO TRANSFER PETITIONER AND MOTION FOR IMMEDIATE PRELIMINARY INJUNCTION (DKT. NO. 28)**

**I.    Motion to Appoint Counsel (Dkt. No. 27)**

Chief Judge William C. Griesbach screened the petitioner's petition for writ of *habeas corpus* and denied his motion to appoint counsel. Dkt. No. 5. In the order, Judge Griesbach stated that he did not believe that the appointment of counsel would serve the interests of justice. Id. at 3. He found that the petitioner had "a greater than average ability to communicate in writing" and concluded that there was no need for an outside investigation of facts or the gathering of new evidence, and he found that the issues the petitioner had raised were not so complex that denying him counsel would result in a miscarriage of justice. Id. at 4. After the respondent answered, the clerk of court transferred the case to this court and the parties filed their briefs.

On June 21, 2018, the petitioner filed a letter asking about the status of his petition. Dkt. No. 27. He also asked the court to "consider"—the court thinks he meant "reconsider"—the motion that he'd filed back in 2014, asking

1

Judge Griesbach to appoint counsel (dkt. no. 2). Id. He reiterated the issues that he raised in his petition, and asked the court to "consider the appointment of counsel by the Federal Defender's office so [that he] could bring these unconstitutional issues properly into [the court] for review." Id.

It appears that the petitioner is asking the court to reconsider Judge Griesbach's order denying his request for the appointment of counsel. Other than stating how important his issues are, the petitioner has not given the court any reason to reconsider that decision. There is no statutory or constitutional right to court-appointed counsel in federal civil litigation. Pruitt v. Mote, 503 F.3d 647, 647 (7th Cir. 2007). This is particularly true in *habeas* cases. The Seventh Circuit Court of Appeals has held that "[a] litigant is not entitled to appointed counsel in a federal postconviction proceeding," although it notes that a district court "may appoint counsel if 'the interests of justice so require.'" Taylor v. Knight, 223 Fed. App'x 503, 504 (7th Cir. 2007) (citations omitted) (quoting 18 U.S.C. §3006A(a)(2)(B)).

The parties have briefed the issues the petitioner raised. It is not the fact that the petitioner does not have a lawyer that is making this case drag on; it is the court's heavy case load and large backlog. There is nothing a lawyer could do for the petitioner right now, even if the court believed that he needed one, and the court does not. The court agrees with Judge Griesbach that the petitioner writes clearly, and is able to explain his arguments in a way that the court can understand them. There is nothing to do at this point but for the court to rule on the petition. The court hopes to be able to do that soon.

## II. Objection to Transfer Petitioner Under Rule 36 and Motion for Immediate Preliminary Injunction to Stop Retaliatory Acts Causing Emotional Abuse (Dkt. No. 28)

On November 26, 2018, the petitioner filed a motion asking the court to grant him preliminary injunctive relief. Dkt. No. 28. He signed the motion on November 18, 2018. Id. at 8. A history of the petitioner's housing assignments is helpful to understanding his argument, and the court's ruling.

The petitioner went into the custody of the Department of Corrections in December 2002. https://appsdoc.wi.gov/lop/detail.do. After a little over a month in reception at Dodge Correctional Institution (the central reception center for adult male inmates), he was designated to the minimum-security section of the Fox Lake Correctional Center (FLCC). Id. He eventually was released to extended supervision in January of 2005. Id. In October 2006, he returned to Department of Corrections custody, and eventually was designated to the Fox Lake Correctional Institution (FLCI). Id. He remained at FLCI for the next ten years, through November 2016, and was housed there when he filed this petition in May 2014. Id. On November 23, 2016, he was transferred to Oakhill Correctional Institution. Id. Two years later, the petitioner was transferred from Oakhill to Dodge Correctional Institution to Columbia Correctional Institution. Id.

The petitioner says that in 2015, while he was at FLCI, he helped someone named Ryan Rozak filed a federal civil rights lawsuit against Randall Hepp, who at that time was the warden at FLCI. Dkt. No. 28 at 2. The petitioner says that Rozak had attorneys, and that Rozak notified the petitioner

3

that the attorneys wanted to talk to him about the lawsuit and about discovery materials that were being sent to Rozak. Id. The petitioner says that there was a conference call scheduled for November 22, 2016, but before that call took place, Rozak's lawyers delivered the discovery to FLCI's mail room, where a captain intercepted them. Id. The petitioner says that the captain called Rozak to his office and threatened Rozak (apparently because of the amount of paperwork that had been delivered). Id. The petitioner says Rozak went straight back to his unit and called his lawyers, who called Warden Hepp, who disciplined the captain. Id. at 2-3. The petitioner says that Rozak's lawyer also called Department of Corrections headquarters in Madison. Id. at 3.

The petitioner alleges that Hepp went to Rozak's housing unit and asked if Rozak knew the petitioner. Id. When Rozak replied that he did know the petitioner, Hepp said that the petitioner had "made a lot of enemies in Madison;" Rozak related this to the petitioner the next morning. Id.

On November 22, 2016, the petitioner participated in the conference call with Rozak's lawyers, and was told that he might be a "victim-witness" to Rozak's suit. Id. The petitioner alleges that "the very next day," he was moved to Oakhill Correctional Institution (a minimum security prison), despite the fact that he was supposed to have been moved to the John C. Burke Correctional Center (a minimum security facility offering work release programs). Id. The petitioner says he later found out that Rozak's case was resolved through arbitration, and that the governor of Wisconsin had given FLCI three million dollars to correct the water issue that was the subject of Rozak's suit. Id.

4

The petitioner says that while the "court proceedings" were pending, Hepp became the interim warden at Oakhill, where the petitioner had been living since November 23, 2016 (the day after the conference call with Rozak's lawyers). Id.

The petitioner believes that because he helped Rozak with Rozak's lawsuit, Oakhill staff were mistreating him and subjecting him to emotional abuse by misrepresenting facts, lying to him and threatening him with loss of possible work release and community custody privileges. Id. at 7. He says that he saw others getting community custody jobs even though they had much more time left until their mandatory release dates than he did. Id. He says that Oakhill staff failed to notify him when his only aunt died in early November 2018. Id.

The petitioner also alleges that the Parole Review Committee and the Bureau of Classification and Movement were retaliating against him for filing this *habeas* petition, by eliminating him from programs that he needed to complete in order to earn work release privileges. Id. at 1, 5, 7. He indicates that he found out that the husband of the petitioner's "accident victim" had worked for the Department of Corrections for twenty-two years, and as of the date of the motion, had a position with the Department of Administration in Madison, "Which the [Bureau of Classification and Movement] is affiliated." Id. at 5. The petitioner alleged that this fact raised a concern for "victim-family retaliation." Id. The petitioner indicates that he found out money was being

5

misappropriated from his inmate account; he filed inmate complaints but they have been denied or dismissed. Id. at 5-7.

For all these reasons, the petitioner asks the court to order the Department of Corrections and Oakhill to "relinquish" all documents in his confidential file for investigation, to expose possible violations of his rights. Id. at 8. He asked the court to issue an order under Federal Rule of Civil Procedure 36, prohibiting Oakhill from transferring him to anywhere other than a "center."[1] Id.

"[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc., 549 F.3d 1079, 1085 (7th Cir. 2008) (quoting Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 389 (7th Cir. 1984)). To determine whether such an extraordinary remedy is warranted, a district court "engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." Id. at 1085-1086.

To survive the "threshold" phase, a party asking for a preliminary injunction must show (a) "that absent a preliminary injunction, [he] will suffer irreparable harm in the interim period prior to final resolution of [his] claims;" (b) "that traditional legal remedies would be inadequate," and (c) "that [his]

---

[1] Fed. R. Civ. P. 36 allows a party in a civil lawsuit to serve written requests for admission on the other side. It is not clear how this rule provides a basis for the petitioner's request for injunctive relief.

claim has some likelihood of succeeding on the merits." Id. (citations omitted). If the party asking for the injunction fails to demonstrate any of these requirements, the court must deny the injunction. Id. (citation omitted). Only if the party has met all three requirements does the court move to the balancing phase, where it weighs the irreparable harm the moving party would suffer if the court didn't grant the injunctive relief against the irreparable harm the nonmoving party would suffer if the court granted the relief. Id. (citations omitted).

The petitioner has not met the threshold requirements for the court to issue a preliminary injunction. First, in the time since the petitioner filed his request for injunctive relief, he has been moved out of Oakhill. To the extent that he asked for injunctive relief to protect him from mistreatment at Oakhill, he no longer needs that protection. Second, to the extent that the petitioner believes that people retaliated against him for helping Rozak or for filing this *habeas* petition, there is a remedy available to him: he can bring a lawsuit against those people under 42 U.S.C. §1983. This means he has an adequate remedy at law for those concerns. Third, the court cannot issue injunctive relief for a harm that the petitioner thinks *might* happen, such as his concern that a member of the victim's family *might* retaliate against him. A party seeking injunctive relief must demonstrate that that party is suffering irreparable harm, not that he might suffer irreparable harm in the future. Fourth, a federal *habeas* petitioner has an uphill battle in demonstrating that he has a reasonable likelihood of success on the merits of his claims. Certainly there are

some *habeas* petitioners who prevail, but a *habeas* petitioner must demonstrate to the federal court that the state court decisions were contrary to or involved an unreasonable application of federal law, or were based on an unreasonable determination of the facts in light of the evidence before the state court. This is a tough standard. Here, the respondent has argued that the petitioner has not met that standard, as well as arguing that the petitioner did not timely file this *habeas* petition.

Because the petitioner has not met the threshold requirements for injunctive relief, the court need not conduct the balancing phase of the analysis. The court will dismiss the petitioner's motions.

### III. Conclusion

The court **CONSTRUES** the petitioner's letter as a second motion to appoint counsel, and **DENIES** that motion **WITHOUT PREJUDICE**. Dkt. No. 27.

The court **DENIES** the petitioner's objection to transfer and motion for immediate preliminary injunction. Dkt. No. 28.

Dated in Milwaukee, Wisconsin this 20th day of March, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**