UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS R AUSTIN,

        Petitioner,

        v.                                                Case No. 14-cv-0608-bhl

SUSAN NOVAK,[1]

        Respondent.

## DECISION AND ORDER

        In 2006, Petitioner Thomas R. Austin entered an *Alford* plea in state court and was convicted of two drunken driving related charges. After several unsuccessful state court challenges to his convictions and sentence, Austin filed a petition for a federal writ of habeas corpus under 28 U.S.C. §2254. Because Austin's habeas petition is, in part, untimely, and otherwise without merit, the Court will dismiss the petition and deny a certificate of appealability.

## BACKGROUND

        In 2006, Austin was charged in Wisconsin circuit court with four counts arising from a motor vehicle accident caused by Austin's alleged operation of a vehicle while intoxicated. Austin entered an *Alford* plea to two of the four charges against him, although he later twice attempted, and failed, to withdraw the plea. (*See* ECF No. 15-3 at 33-34, 39-40.) The state court convicted Austin of: (1) causing great bodily harm to another by operating a vehicle with a prohibited alcohol concentration in violation of Wis. Stat. §940.25(1)(b); and (2) operating a vehicle with a prohibited alcohol concentration for a fifth or subsequent time in violation of Wis. Stat. §346.63(1)(b). (ECF No. 15-2 at 3-5.) The court then sentenced Austin to ten and a half years of initial confinement and eight years of extended supervision. (*Id.*; ECF No. 15-3 at 35.) Austin's April 13, 2007

---

[1] The named respondent, Susan Novak, is no longer the correct respondent under the Rules Governing Section 2254 Cases in the United States District Courts. It is the petitioner's duty to keep the Court apprised of any changes in his case's circumstances, but he has not done so.

judgment of conviction also states that Austin would be "eligible after 4 years for [the state's] Earned Release Program." (ECF No. 15-2 at 3.)[2]

After his conviction, Austin timely pursued a direct appeal with appointed postconviction counsel. Complicating matters, however, he simultaneously pursued other postconviction challenges. In addition to appointed counsel's efforts, Austin filed several *pro se* motions for relief both during and after his direct appeal. (*See*, *e.g.*, ECF No. 15-3 at 41-42, 54-59, 89-97, 182-87.) He also filed a federal habeas corpus petition on September 25, 2009, but that petition was denied at screening based on his failure to exhaust his state court remedies.[3] *Austin v. Deppisch*, No. 09-cv-929-JPS, ECF No. 4 (E.D. Wis. Dec. 3, 2009). Austin's direct appeals came to an end on October 19, 2009, when his deadline to petition the Supreme Court for a writ of certiorari expired.

On August 23, 2010, while at least one of Austin's postconviction efforts was still on appeal, the Wisconsin Department of Corrections notified the circuit court of an error in Austin's judgment of conviction. (ECF No. 15-3 at 197.) The letter explained that Austin was not statutorily eligible for the Earned Release Program and asked the court to enter an amended judgment stating that Austin was "not eligible for this program." (*Id.*) In short order, on August 25, 2010, the circuit court judge issued a corrected judgment of conviction that imposed the same sentence but altered the prior judgment by clarifying that the "Defendant is not eligible for [the] Earned Release Program." (ECF No. 15-2 at 6-8.)

When he received notice of the Department's letter, Austin objected to the requested correction and asked for a hearing. (ECF No. 15-3 at 195.) The circuit court denied Austin's request without a hearing, noting that the "Court determines eligibility" for the program and that the "Court reviewed and confirmed" that it had the power to amend the judgment *sua sponte*. (*Id.*) Austin later challenged the corrected judgment in a state court habeas corpus proceeding. (ECF No. 15-3 at 268-70.) The circuit court rejected his petition and the court of appeals affirmed. (ECF No. 15-3 at 284, 302-05.) Austin then filed this federal habeas petition.

## ANALYSIS

Austin's *pro se* federal habeas petition lists seven scattershot claims for relief, challenging both his initial 2007 conviction and the 2010 corrected judgment of conviction. He contends that

---

[2] As discussed in greater detail below, Wisconsin's Earned Release Program is a discretionary rehabilitative program overseen and implemented by the Wisconsin Department of Corrections. Wis. Admin. Code § DOC 302.39.

[3] Because that petition was dismissed for failure to exhaust, this petition is considered to be Austin's first. *Slack v. McDaniel*, 529 U.S. 473, 487 (2000) ("A petition filed after a mixed petition has been dismissed under *Rose v. Lundy* before the district court adjudicated any claims is to be treated as 'any other first petition' and is not a second or successive petition.").

his initial and corrected judgment of conviction violated: (1) his First Amendment right to access the courts; (2) his Fourth Amendment right against illegal seizures; (3) his Fifth and Fourteenth Amendment Due Process and Equal Protection rights; (4) his Sixth Amendment rights to a jury trial and to effective assistance of counsel; (5) his Eighth Amendment right against cruel and unusual punishment; (6) his Thirteenth Amendment right against involuntary servitude; and (7) his Fourteenth Amendment Due Process and Equal Protection rights (again). (ECF No. 1 at 5-13.)

Austin's petition must be dismissed for two reasons. First, the petition was not timely filed as to the portions of his claims that relate to his initial judgment of conviction. Second, while his challenges to the corrected judgment are timely, they lack merit.

## I. Austin's Petition Is Untimely with Respect to Claims Challenging His Initial Judgment of Conviction.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a request for federal habeas corpus relief is subject to a one-year limitation period. 28 U.S.C. §2244(d)(1). Generally, this limitation period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A); *see Dodd v. United States*, 545 U.S. 353, 357 (2005) ("In most cases, the operative date from which the limitation period is measured will be the one identified in [§2244(d)(1)(A)]: 'the date on which the judgment of conviction becomes final.'"). The statute also embraces a discovery rule; the limitation period does not begin to run on certain claims until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §2244(d)(1)(D).[4] Further, regardless of the starting date, the limitations period is tolled when the petitioner has a properly filed, pending application for post-conviction or collateral review of the challenged judgment. 28 U.S.C. §2244(d)(2).

Austin could have, and did, raise many of the claims related to his initial conviction during his direct state court appeal. The one-year limitations period on these claims began to run when the judgment on his direct appeal became final and Austin had no further avenues for appeal. The Wisconsin Supreme Court denied Austin's petition for review of his direct appeal and the remittitur was issued on July 20, 2009. (ECF No. 15-4 at 192-93); *see Balsewicz v. Kingston*, 425 F.3d 1029, 1032 (7th Cir. 2005) (citing Wis. Stat. §809.26; *State ex rel. Fuentes v. Wisconsin Court of Appeals*, 593 N.W.2d 48, 51 (1999)) ("In Wisconsin, a direct challenge to a conviction becomes

---

[4] The statute also provides for a later running of the limitations period in situations where state action creates an impediment to filing an application and where the Supreme Court newly recognizes a constitutional right. 28 U.S.C. §2244(d)(1)(B), (C). Austin's claims do not implicate either of these provisions.

'final' the day the Remittitur issues."). Austin's deadline to petition for a writ of certiorari in the Supreme Court expired ninety days later—on October 19, 2009. 28 U.S.C. §2244(d)(1)(A); *Lawrence v. Florida*, 549 U.S. 327, 333 (2007) (noting that "the 'time for seeking' direct review…includes review by" the Supreme Court under §2244(d)(1)(A)). Thus, the habeas limitations period began to run on any challenges to Austin's initial judgment of conviction on October 19, 2009.

Austin's many post-conviction challenges to the initial judgment effectively tolled the limitations period for much of the time between October 19, 2009 and May 29, 2014, when he filed this Section 2254 petition. At the time his direct appeal ended, Austin had a state habeas petition pending, (*see* ECF No. 15-5 at 1-4), and thus the limitations period remained tolled.[5] It was only after Austin's state habeas proceeding ended with the issuance of a November 4, 2009 remittitur, (ECF No. 15-5 at 118-19), that the federal habeas limitations period began to run. The limitations period then ran for seventy-one days, from November 5, 2009 to January 15, 2010, when Austin filed another motion for postconviction relief, which again tolled the limitations period. (*See* ECF No. 15-3 at 89-97.) This tolling lasted from January 15, 2010 until May 28, 2013, when the remittitur issued on Austin's last postconviction challenge. (*See* ECF No. 15-7 at 286-87.) This left 294 days remaining in the limitations period, which finally expired on March 19, 2014. Austin did not sign and mail to the clerk his federal habeas petition for another two months, until May 22, 2014. (ECF No. 1 at 17.) Accordingly, any claims based on Austin's initial judgment are untimely.

Austin does not challenge these facts or the resulting calculations. Instead, he argues he should be allowed to continue with his claims notwithstanding their timeliness, invoking equitable estoppel, equitable tolling, and the discovery rule. (ECF No. 24 at 6-9.) Austin offers little explanation for how these doctrines apply and, in fact, other than the discovery rule codified in 28 U.S.C. §2244(d)(1)(D), they do not.

---

[5] The respondent "does not dispute that the habeas corpus petition filed in the Fond du Lac County Circuit Court qualified as 'a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim' for purposes of 28 U.S.C. § 2244(d)(2)." (ECF No. 22 at 11 n.12.) But this particular state habeas petition was denied for Austin's failure to pay the filing fee. *State ex rel. Austin v. Circuit Court for Fond du Lac County*, No. 2008AP3091, unpublished slip op., (Wis. Ct. App. Jun. 17, 2009) (ECF No. 15-5 at 86-89). The Court doubts such a filing could be considered proper under the statute, and therefore questions whether this filing tolled the limitations period at all. *See Simms v. Acevedo*, 595 F.3d 774, 777-80 (7th Cir. 2010) (holding that a state habeas petition filed along with an application to proceed *in forma pauperis* but without the petitioner's trust fund account information, as required, was not properly filed under Illinois law and therefore did not toll the statute of limitations). Nevertheless, resolving this issue in Austin's favor does not change the end result.

Under Seventh Circuit caselaw, equitable estoppel can apply to habeas claims but only as a remedy for actions taken by a defendant that prevented "the plaintiff from suing within the statutory period." *Williams v. Sims*, 390 F.3d 958, 959-60 (7th Cir. 2004) (citations omitted) ("One standard example is where the defendant has fraudulently concealed from the plaintiff the existence of a claim against the defendant. … Another is where the defendant requested the plaintiff to delay suit while the parties tried to negotiate a settlement."). Austin does not allege, let alone offer proof, that defendants had any role in delaying the filing of his petition. Accordingly, equitable estoppel does not apply.

The Seventh Circuit has emphasized that equitable tolling is rarely appropriate. In the habeas context, it applies only when a filing was delayed by conditions "far beyond the litigant's control." *Conroy v. Thompson*, 929 F.3d 818, 820 (7th Cir. 2019) (quoting *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014)). The doctrine requires a petitioner to prove "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). As with his equitable estoppel assertion, Austin does not allege or offer proof of any extraordinary circumstances sufficient to warrant equitable tolling. Austin contends he "has been diligently proceeding with litigations" and that "the State requested many, many, many extensions of time." (ECF No. 18 at 6.) The Court agrees that Austin has been a prolific filer, (*see* ECF No. 15-1), and that his adversary has asked for, and received, at least six extensions of time (*see* ECF Nos. 10, 11, 12 13, 20, 21). But neither fact satisfies the standard for equitable tolling. Rather, the record suggests that Austin simply miscalculated his federal habeas filing deadline. But an error in calculating a deadline does not warrant the application of equitable tolling. *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020) (citing *Holland v. Florida*, 560 U.S. 631, 649-52 (2010)) ("[S]imple legal errors, such as ignorance of the federal deadline, do not suffice.").

Austin's invocation of the discovery rule is closer to being on point. The only discovery rule applicable to habeas claims is the one codified in 28 U.S.C. §2244(d)(1)(D), which delays the start of the limitations period to be "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 745 (E.D. Wis. 2000) ("[Section] 2244(d)(1)(D) comports with the federal common-law discovery rule under which a claim accrues when the victim knows of his injury even though the victim does not know that the injury is actionable."). Austin's challenges to his initial conviction, by their nature, were or could have been raised on direct appeal. As to

those claims and arguments, the limitations period ran (subject to tolling) from the date he ran out of challenges to his initial judgment—October 19, 2009.

Austin's challenges to his August 25, 2010 corrected judgment of conviction stand on different ground, however. The factual predicate for that claim and related arguments, by definition, could not have been known or discovered until the corrected judgment was entered. Accordingly, the limitations period applicable to those claims did not begin to run until that later date. *See* 28 U.S.C. §2244(d)(1)(D); *Davis v. United States*, 817 F.3d 319, 328 (7th Cir. 2016) (citations omitted) (noting that different claims for habeas relief may have different start dates and thus "the timeliness of each claim asserted in … a petition challenging a state-court conviction under 28 U.S.C. §2254 must be considered independently.") As previously noted, Austin's extensive filings for postconviction relief in state court tolled the limitations period from January 15, 2010 until May 28, 2013. The period was thus tolled when the state court entered the corrected judgment of conviction and did not begin running until May 29, 2013, giving Austin until May 28, 2014 to file any claims challenging the corrected judgment. Because Austin signed his habeas petition on May 22, 2014, and it was filed with this Court on May 28, 2014, Austin's claims related to the corrected judgment are timely and will be considered on their merits.

## II. Austin's Challenges to the Corrected Judgment of Conviction Fail on Their Merits and Do Not Warrant Habeas Relief.

Determining which of Austin's claims and arguments are barred by the statute of limitations is no easy task. Austin's petition lists seven claims for habeas relief, but the claims are not broken down between challenges to his original and corrected judgments of conviction. Indeed, his arguments are intertwined and often hard to understand. Because he is representing himself without the benefit of counsel, the Court will give Austin the benefit of the doubt and, where there is any question, will treat Austin's claims as timely challenges to his corrected judgment of conviction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting that the filings of *pro se* litigants are liberally construed).

When considering a habeas petition, a federal court reviews the "decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)). Under AEDPA, a federal court may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014) (quoting 28 U.S.C. §2254(d)(1), (2)). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). When the state court does not reach particular claims on the merits, a federal court reviews those claims *de novo* under the general habeas standard of 28 U.S.C. §2243. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Muth v. Frank*, 412 F.3d 808, 814 (7th Cir. 2005). Section 2243 requires the court to "summarily hear and determine the facts, and dispose of the matter as law and justice require."

### A. Austin Is Not Entitled to Habeas Relief on His First Amendment Access to the Courts Claim.

Austin's first claim for habeas relief asserts the denial of his First Amendment right to access the courts. (ECF No. 1 at 5.) The scope of this claim is difficult to discern; Austin does not clearly articulate this claim in his petition or explicitly support it in his briefing. To the extent the claim challenges Austin's corrected judgment, the Court understands Austin to be complaining that he was denied an evidentiary hearing on his challenge to the state court's entry of the corrected judgment. His other arguments all relate to the manner in which the state courts handled and resolved his various legal challenges to his judgment and corrected judgment of conviction.

"Prisoners have a fundamental right of access to the courts that prisons must facilitate by providing legal assistance," *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012) (citing *Bounds v. Smith*, 430 U.S. 817 (1977), abrogated by *Lewis v. Casey*, 518 U.S. 343 (1996)), including by providing tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). To prevail on a claimed violation of his right to access the courts, Austin must allege and prove that his ability to litigate his non-frivolous claims was hindered and that he suffered a concrete injury in consequence. *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000) (citing *Lewis v. Casey*, 518 U.S. 343, 350-54 (1996)).

As a general matter, the record does not support the suggestion that Austin was deprived of his right to access the courts. To the contrary, Austin has made ample use of the state courts to challenge his conviction and air his grievances. As of October 2012, Austin had brought a direct appeal, an appeal from denial of a Wis. Stat. §974.06 motion, an appeal from denial of a state habeas petition, and an appeal from denial of a supervisory writ petition. *See State ex rel. Austin v. Jenkins*, No. 2011AP1320, unpublished slip op., 3 (Wis. Ct. App. Oct. 31, 2012) (ECF No. 15-3 at 302-05). Since that time, a quick Westlaw search shows that Austin has filed at least one more request for relief in state court after this federal habeas petition was filed. *See State v. Austin*, No. 2015AP2164-CR, 2017 WL 1364108 (Wis. Ct. App. Apr. 12, 2017) (affirming the circuit court's use of discretion to deny Austin's petition for sentence adjustment and Austin's petition for positive adjustment time). At best, he simply disagrees with the outcomes of his many state court challenges to his convictions and sentence. But that he has not prevailed does not mean that he lacked access.

As for Austin's challenge to his corrected judgment, he has not shown that he had any legal right to a hearing before the trial court amended his judgment of conviction. The state court ruled that it had the power under state law to make this correction to the criminal judgment, (ECF No. 15-3 at 284), and the Wisconsin court of appeals affirmed. *State ex rel. Austin v. Jenkins*, No. 2011AP1320, unpublished slip op. (Wis. Ct. App. Oct. 31, 2012) (ECF No. 15-3 at 302-05). Under Wisconsin law, Austin was entitled to an evidentiary hearing on his objection only if the objection raised sufficient and true facts proving that he was entitled to relief. *See State v. Balliette*, 2011 WI 79, ¶ 18, 805 N.W.2d 334, 339 (citation omitted) ("If the motion raises sufficient facts that, if true, show that the defendant is entitled to relief, the circuit court must hold an evidentiary hearing."). However, the trial court retained discretion to deny Austin a hearing on his objection if it found that the objection failed "to raise a question of fact, or present[ed] only conclusory allegations, or if the record conclusively demonstrate[ed] that [Austin] [wa]s not entitled to relief." *State v. Bentley*, 548 N.W.2d 50, 53 (1996) (quoting *Nelson v. State*, 195 N.W.2d 629, 633 (1972)). Similarly, Austin had no right to a hearing on his appeal of that decision. The Wisconsin Rules of Appellate Procedure permitted the Wisconsin court of appeals to "dispose of an appeal summarily." Wis. Stat. Rule 809.21(1).

Thus, the state courts' resolutions of these issues appear to have been entirely proper and correct under Wisconsin law. But, even if state procedure would have required a hearing in either the trial or appellate courts, such state law procedural violations, without more, are insufficient to warrant federal habeas relief. *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v.*

*Thompson*, 501 U.S. 722, 729 (1991)) ("It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Accordingly, there is no basis to grant the relief Austin seeks on this ground, and his claim must be denied.

### B. Austin's Due Process and Equal Protection Claims Likewise Do Not Warrant Habeas Relief.

Austin's third and seventh claims are based on the due process and equal protection clauses of the Fourteenth Amendment.[6] (ECF No. 1 at 8, 13.) Like his access to courts claim, these challenges are disorganized and ill-defined. Reading Austin's filings generously, the Court understands Austin to claim that his trial counsel, the sentencing judge, the state's prosecutor, and the pre-sentence report writer all improperly misinformed him that he would be eligible for Wisconsin's Earned Release Program, and that this misinformation induced him to agree to a plea in violation of his due process and equal protection rights. The Court also understands Austin to argue that the state courts' rejection of his challenge to the corrected judgment violated his due process rights because the ruling was "contrary" to the Wisconsin court of appeals' opinions in "many other cases." (ECF No. 1 at 13.) Neither argument supports habeas relief.

Austin argued in his state habeas proceedings that his *Alford* plea was involuntary because it was based on his perceived eligibility for the Earned Release Program. (ECF No. 15-3 at 269.) The circuit court rejected this claim and dismissed his petition on April 22, 2011. (ECF No. 15-3 at 284.) The court explained that "the only time that the issue of the Earned Release Program (ERP) was ever mentioned in Court was by me at the conclusion of the Sentencing Hearing…after the sentence had been imposed." (*Id.*) The court commented on the Department of Corrections' delay in notifying the court of the error concerning Austin's eligibility for the Earned Release Program but then ruled there was "neither any prejudice nor deprivation of rights. … Also, neither your plea nor sentence was in any way compromised or predicated on any ERP entitlement." (*Id.*)

---

[6] Austin cites to both the Fifth and Fourteenth Amendments. Because Austin's claims relate to the conduct of state officials, his claims rest on the due process clause of the Fourteenth Amendment only. *Cf. Wrinkles v. Davis*, 311 F. Supp. 2d 735, 738 (N.D. Ind. 2004) ("The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials."). Also, several of Austin's due process and equal protection arguments relate to his initial judgment. Those claims are untimely, as discussed above, and the Court will not address them other than to note that they also lack merit.

The Wisconsin court of appeals rejected Austin's appeal from this dismissal, concluding that Austin's injury, such as it was, did not rise to the level of a constitutional harm. *State ex rel. Austin v. Jenkins*, No. 2011AP1320, unpublished slip op., 3 (Wis. Ct. App. Oct. 31, 2012) (ECF No. 15-3 at 304). The court of appeals explained, "[t]he record does not reveal any basis to suggest that the opportunity to participate in the Earned Release Program induced Austin's decision to change his plea …[or] influenced the circuit court's decision to impose an aggregate sentence of ten years and six months of initial confinement and eight years of extended supervision." *Id.* at 3-4 (ECF No. 15-3 at 304-05). The court also concluded that "the circuit court had the authority to correct the judgment of conviction by removing [Austin's] eligibility for participation in the Earned Release Program. Although the circuit court entered the corrected judgment while Austin had an appeal pending, it had authority to do so under Wis. Stat. §808.075(4)(g)6." *Id.* at 3 (ECF No. 15-3 at 304).

The Wisconsin courts' rejections of Austin's arguments did not involve an unreasonable application of federal law and were not based on unreasonable factual determinations. Both the circuit court and court of appeals rejected Austin's challenge to the voluntariness of his plea consistent with the Supreme Court's precedents. A constitutionally valid guilty plea must be made in a knowing, voluntary, and intelligent manner. *Brady v. United States*, 397 U.S. 742, 747 n.4 (1970) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). The plea hearing transcript shows that the circuit court judge thoroughly examined Austin and his understanding of his plea before accepting it, and that Austin affirmed he was knowingly and voluntarily agreeing to enter an *Alford* plea. (ECF No. 15-8 at 77-83, 94-100.) Austin confirmed for the court that he understood the maximum penalties, that the court was not bound by a plea agreement and could sentence him to the extent permitted under law, and that his *Alford* plea would be treated as a guilty plea at sentencing. (*Id.* at 78.) The court's subsequent conclusion regarding the mistaken description of Austin's eligibility for the Earned Release Program was also not unreasonable.

Austin's insistence that his plea was entered based on his eligibility for the Earned Release Program, (ECF No. 18 at 11), is not supported by the record. Austin's eligibility for the program was not included in Austin's plea questionnaire, (ECF No. 15-3 at 25-27), or discussed during the plea hearing, (*see* ECF No. 15-8 at 71-105). At the sentencing hearing, the prosecutor requested the maximum sentence under the law be imposed on Austin and made no mention of Austin's eligibility. (ECF No. 15-8 at 173-74.) Neither did Austin's trial counsel. (ECF No. 15-8 at 182.) The trial court did not reach the issue of Austin's eligibility for the Earned Release Program until after it had set Austin's time in confinement, fees, costs, and conditions of extended supervision.

(ECF No. 15-8 at 204-09.) At no time did the trial court or counsel refer to plea negotiations when discussing Austin's eligibility for the Earned Release Program. (ECF No. 15-8 at 209-11.) Austin is not entitled to relief on this claim.

### C. Austin's Ineffective Assistance of Counsel Claims Do Not Warrant Habeas Relief.

Austin's fourth habeas claim is based on ineffective assistance of counsel. The Court understands Austin to complain about various failures by both his trial and appellate counsel. Austin alleges his trial counsel was constitutionally ineffective because she: (1) misinformed Austin about his Earned Release Program eligibility such that he agreed to enter an *Alford* plea; (2) failed to investigate Austin's prior criminal history; (3) failed to hire an expert to examine his vehicle's brakes and develop a defense for his case; and (4) failed to suppress prejudicial statements made up by the police and printed in a local newspaper. Austin contends he received ineffective assistance from postconviction counsel when that attorney failed to raise ineffective assistance of trial counsel for all the stated reasons as grounds for relief on direct appeal. All but the first complaint about counsel's performance were or could have been raised during Austin's direct appeal from his initial conviction and are thus untimely. Accordingly, the Court will limit its consideration to the ineffective assistance claims related to or arising from the corrected judgment.

Claims of ineffective assistance of counsel under the Sixth Amendment are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, a claim for ineffective assistance of counsel must be shown by proving "deficient performance by counsel resulting in prejudice, with performance being measured against an objective standard of reasonableness under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (cleaned up). Austin must prove both "that counsel provided constitutionally deficient performance, meaning counsel made errors so serious he 'was not functioning as the counsel guaranteed the defendant by the Sixth Amendment,'" and "that this deficient performance prejudiced his defense—meaning there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Winfield v. Dorethy*, 956 F.3d 442, 451-52 (7th Cir. 2020) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)).

With respect to Austin's ineffective assistance claims related to Austin's corrected judgment, he alleges that trial counsel "mis-informed" him about his eligibility and failed to tell him that he was statutorily ineligible for the program. (ECF No. 24 at 12, 22.) Austin states he

"was going to proceed to trial, if it was not for the mis-advise, a conflict of interest and other acts/ommittances that were discovered post-plea and pre-sentencing as a withdraw of plea was sought." (ECF No. 24 at 22.) While not entirely clear, Austin seems to be suggesting that but for his counsel's failure to apprise him of his ineligibility for the early release program, he would have proceeded to trial. He further argues that he has been prejudiced because he agreed to enter an *Alford* plea to avoid a "maximum" sentence and that, because he was later deemed ineligible for the Earned Release Program, he is now serving that maximum sentence. (ECF No. 18 at 21-22.)

The Supreme Court ruled on a similar issue in *Hill v. Lockhart*, 474 U.S. 52 (1985). In *Hill*, a petitioner brought a habeas claim for ineffective assistance of counsel based on his trial attorney's failure to inform him of the amount of time he would be required to serve in prison before he became eligible for parole. *Id.* at 54-55. The petitioner's trial counsel during plea negotiations and the trial court judge at sentencing both told the petitioner that he would be eligible for parole after serving at least one-third of his sentence. *Id.* Because petitioner had a previous conviction in a different state, however, he was not eligible for parole until he served at least one-half of his sentence. *Id.* at 55. After reviewing the petitioner's claim, the Supreme Court "conclude[d] that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of 'prejudice.'" *Hill*, 474 U.S. at 60. The Court reasoned,

> Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

*Id.* So, even though petitioner's trial counsel and the trial court judge misinformed the petitioner as to his parole eligibility date, the mistake was not prejudicial to the petitioner.

Austin's arguments fail first because they reflect a misunderstanding of Wisconsin's *discretionary* Earned Release Program.[7] While Wisconsin law requires the trial court to determine the offender's eligibility for the Earned Release Program at sentencing, Wis. Stat. §973.01(3g), that determination is not a guarantee of participation in the program. Under state law, the Department of Corrections has discretion to choose when and which eligible offenders participate. Wis. Admin. Code § DOC 302.39(3), (4). Offenders, like Austin, who are convicted of crimes

---

[7] Successful completion of the Earned Release Program requires the court to modify the sentences of those offenders by reducing their time in confinement and increasing their time in extended supervision such that the overall length of the sentence remains the same. Wis. Stat. §302.05(3)(c)2.

under Wis. Stats. ch. 940, are ineligible for the program. Wis. Stat. §§302.05(3)(a)1, 973.01(3g); Wis. Admin. Code § DOC 302.39(1). But even if he had been eligible, the Department of Corrections retained discretion to deny him participation. Like the defendant in *Hill*, Austin was not prejudiced by any mistake of counsel relating to Austin's eligibility for the Earned Release Program.

Indeed, Austin's complaint about counsel's alleged failure to advise him about the Early Release Program is substantially less significant than the error discussed and rejected by the Supreme Court in *Hill*. While Austin does seem to allege that he would have pled not guilty and proceeded to trial but for the mistake, the issue in *Hill* involved the petitioner's eligibility for parole, not his eligibility for an optional and discretionary early release program. The corrected judgment removing Austin's eligibility for the program therefore did not deprive Austin of a property right or a liberty interest. *See Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (quoting *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982) ("There is no constitutional mandate to provide educational, rehabilitative, or vocational programs."); *Higgason v. Farley*, 83 F.3d 807, 809-10 (7th Cir. 1996) ("Even if Higgason had been given the opportunity, it was not inevitable that he would complete an educational program and earn good time credits. Thus, denying the opportunity to earn credits did not inevitably affect the duration of the sentence, and did not infringe on a protected liberty interest."). Because Austin had no right to participate in the Earned Release Program, Austin was not prejudiced by his counsel's mistake and cannot be granted relief on this claim.

Moreover, Austin has not alleged any "special circumstances that might support the conclusion that he placed particular emphasis on his [Earned Release Program] eligibility in deciding whether or not to plead." *Hill*, 474 U.S. at 60. The transcripts of the plea and sentencing hearings also confirm that Austin's eligibility for the Earned Release Program was an afterthought and not discussed as part of Austin's plea. (*See* ECF No. 15-8 at 77-83, 94-100, 204-11.) Accordingly, the Court finds that Austin was not prejudiced by his counsel's mistaken understanding of the relevant statute. Because the Court concludes that Austin was not prejudiced, the Court will not decide whether his trial counsel's representation was constitutionally deficient under the *Strickland* standard.

Austin's claim of ineffective assistance as to his postconviction counsel fails for the same reasons. Because Austin was not prejudiced by his trial counsel's mistake, his postconviction counsel's failure to raise the mistake as an issue on appeal was also not prejudicial. Austin is not entitled to habeas relief on this claim.

### D. Austin's Second, Fifth, and Sixth Grounds for Relief Fail to State Viable Claims.

The remainder of Austin's grounds for relief generally relate to harms resulting from what he contends is his improper continued confinement.[8] With minimal legal and factual support, Austin claims that his continued imprisonment violates the Fourth, Eighth, and Thirteenth Amendments. Even given a generous reading, these final claims are without merit.

Austin's second ground for relief is based on the Fourth Amendment's guarantee against unreasonable seizures. He provides scant detail to support a Fourth Amendment claim. He does not allege anything about his arrest, a traffic stop, or the use of force against him. He simply claims that his "UNLAWFUL SEIZURE … IS NOW THE CONSEQUENCE" of the "illegal" judgment and sentence. (ECF No. 1 at 7.) His supporting documents are similarly devoid of arguments concerning the Fourth Amendment. This is insufficient to support a claim. *Cf. Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)) ("The petitioner carries the burden of proof."). Austin is therefore not entitled to relief on this ground.

Austin's fifth claim cites the Eighth Amendment prohibition against cruel and unusual punishment. Most of his supporting arguments appear to relate to the state court's reliance upon one of his earlier drunk driving convictions in finding him guilty under Wis. Stat. §346.63(1)(b) of operating a vehicle with a prohibited alcohol concentration for a fifth or subsequent time. These arguments tie back to his initial judgment and are therefore time-barred.

Austin's sixth habeas claim cites to the Thirteenth Amendment. Austin is not entitled to relief on this claim. "The Thirteenth Amendment, which forbids involuntary servitude, has an express exception for persons imprisoned pursuant to conviction for crime." *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999). The Wisconsin state courts have routinely denied Austin's challenges to his conviction, and as such, Austin is imprisoned properly and in accordance with the law. Austin's sixth claim is frivolous.

### CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could

---

[8] Austin was released on extended supervision on December 17, 2019. Offender Locator, https://appsdoc.wi.gov/lop/detail.do (last visited Apr. 16, 2021). He is no longer incarcerated.

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).  Because no reasonable jurists could debate that the petition should have been resolved differently, the Court will not issue a certificate of appealability.  Accordingly**,**

**IT IS HEREBY ORDERED** that Austin's petition for writ of habeas corpus, ECF No. 1, is **DENIED**, and this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court **DENIES** a certificate of appealability.

Dated at Milwaukee, Wisconsin on April 19, 2021.

s/ Brett H. Ludwig
BRETT H. LUDWIG
United States District Judge
